USDC SCAN INDEX SHEET










```
CGL    2/14/05    11:13
3:04-CV-01029    INTL DATA ENTRY CORP V. FASTRAC 24/7 CORP
*37*
*CNTCLM.*
```

ORIGINAL
FILED

05 FEB 11 PM 2:46

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

1  Callie A. Bjurstrom, State Bar No. 137816
   Michelle A. Herrera, State Bar No. 209842
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Facsimile No.: 619.232.8311

5  Attorneys for Fastrac 24/7 Corp., Ithaka Holdings, Inc. and David Ames

8              UNITED STATES DISTRICT COURT

9           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL DATA ENTRY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>FASTRAC 24/7 CORPORATION; ITHAKA HOLDINGS INC.; DAVID AMES, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 04CV1029 LAB (AJB)<br><br>The Hon. Larry Alan Burns<br><br>**FASTRAC 24/7 CORPORATION'S COUNTERCLAIM FOR (1) BREACH OF CONTRACT; (2) FRAUD; (3) NEGLIGENT MISREPRESENTATION; AND (4) INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS**<br><br>Complaint Filed: May 20, 2004 |
| FASTRAC 24/7 CORPORATION, a Delaware corporation,<br><br>Counter-Claimant,<br><br>v.<br><br>INTERNATIONAL DATA ENTRY CORPORATION, a California corporation; ANTONIO VARELA, an individual; JULIA COLLINS, an individual; and FRANK CAPERINO, an individual<br><br>Counter-Defendants. | |

Case No. 04cv1029 LAB(AJB)

Counter-Claimant Fastrac 24/7 Corporation asserts its Counterclaim as follows:

## GENERAL ALLEGATIONS

1. Counter-Claimant Fastrac 24/7 Corporation ("Counter-Claimant" or "Fastrac 24/7") is a corporation organized and existing under the laws of Delaware, with its principal place of business in Pima County, Arizona. Fastrac 24/7 is in the business of providing automobile insurance tracking information to automobile retailers, lessors and insurers, and to entities that finance consumer automobile purchases.

2. Counter-Claimant is informed and believes and thereon alleges that Counter-Defendant International Data Entry Corporation ("IDEC") is a corporation organized and existing under the laws of the State of California and doing business within this judicial district. Counter-Claimant is further informed and believes and thereon alleges that IDEC is in the business of providing data entry services.

3. Counter-Claimant is informed and believes and thereon alleges that Counter-Defendant Antonio Varela ("Varela") is an individual who, at all times mentioned herein, was a resident of San Diego County, California. Counter-Claimant is informed and believes and thereon alleges that Varela is, and at all times relevant herein was, the President of IDEC.

4. Counter-Claimant is informed and believes and thereon alleges that Counter-Defendant Julia Collins ("Collins") is an individual who, at all times mentioned herein, was a resident of San Diego County, California. Counter-Claimant is informed and believes and thereon alleges that Collins is, and at all times relevant herein was, the Vice-President of IDEC.

5. Counter-Claimant is informed and believes and thereon alleges that Counter-Defendant Frank Caperino ("Caperino") is an individual who, at all times mentioned herein, was a resident of San Diego County, California. Counter-Claimant is informed and believes and thereon alleges that Caperino is, and at all times relevant herein was, the Secretary of IDEC.

6. Counter-Claimant is informed and believes, and thereon alleges, that Counter-Defendant IDEC is, and at all times herein mentioned was, a mere shell, instrumentality and conduit through which Counter-Defendants Varela, Collins and Caperino carry on their business in the corporate name, exercising complete control and dominance over such business to such an

1. extent that any individuality or separateness of Counter-Defendant IDEC and Counter-Defendants Varela, Collins and Caperino does not, and at all times herein mentioned did not, exist.

7. Counter-Claimant is informed and believes, and thereon alleges, that Counter-Defendant IDEC is, and at all times herein mentioned was, the alter ego of Counter-Defendants Varela, Collins and Caperino and there exists, and at all times mentioned herein has existed, a unity of interest and ownership between the Counter-Defendants such that any separateness has ceased to exist, in that Counter-Defendants Varela, Collins and Caperino used assets of the corporation for their personal use, caused assets of the corporation to be transferred to them without adequate consideration, and withdrew funds from the corporation's bank accounts for their personal use. Counter-Claimant is further informed and believes, and thereon alleges, that to adhere to the fiction of a separate existence for IDEC as an entity distinct from Varela, Collins and Caperino would result in injustice and would be an abuse of the corporate privilege.

8. Counter-Claimant is informed and believes, and thereon alleges, that all agents, employees and representatives of Counter-Defendants were acting on behalf of Counter-Defendants and within the course and scope of their authority and with the knowledge or consent, express or implied, of Counter-Defendants. In the event such agents, employees or representatives acted outside the course and scope of their authority, such persons shall also be deemed individually liable on the causes of action pled herein.

9. Counter-Claimant is informed and believes and thereon alleges, that at all times mentioned herein, the Counter-Defendants sued were the agents, representatives, and employees of each of the remaining Counter-Defendants, and were at all times acting within the purpose and scope of such agency, representation and employment. Each specifically named Counter-Defendant is liable and responsible for the acts and damages alleged herein.

### FIRST CLAIM FOR RELIEF

**(Breach of Contract Against Counter-Defendant IDEC)**

10. Counter-Claimant realleges and incorporates by reference the allegations contained in paragraphs 1 through 9 above, as though fully set forth herein.

///

11. Fastrac 24/7 is informed and believes, and on that basis alleges, that on or about April 11, 2000, IDEC entered into a Service Agreement with an entity known as First American Fastrac Systems, Inc. ("FSI"), Fastrac 24/7's predecessor in interest, pursuant to which IDEC agreed to provide data entry services to FSI within certain quality control parameters (the "FSI Service Agreement.") Fastrac 24/7 is further informed and believes, and on that basis alleges, that the FSI Service Agreement contained, among others, the following material terms and conditions:

    a. IDEC agreed to maintain a minimum 97% accuracy rate in performing the data entry services described in the agreement;

    b. IDEC agreed to maintain a maximum forty-eight hour turn around time in performing said data entry services; and

    c. FSI agreed to compensate IDEC for the data entry services described in the agreement at the rate of 17.5 cents per document processed.

12. In or about early August 2002, Fastrac 24/7 and IDEC entered into an oral agreement for data entry services under the same terms and conditions set forth in the FSI Service Agreement.

13. On or about August 15, 2002, Fastrac 24/7 and IDEC agreed to modify their agreement for data entry services as follows:

    a. IDEC agreed to maintain a minimum 95% accuracy rate in performing the data entry services described in the agreement; and

    b. Fastrac 24/7 agreed to compensate IDEC for the data entry services provided under the terms of the agreement at the following rates:

        i. 16.4 cents per document categorized by the parties as "vicarious" or "update."

        ii. 6 cents per document categorized by the parties as "non-vicarious," "retail," "look-up" or "obsolete."

///

///

///

14. In or about July 2003, Fastrac 24/7 and IDEC agreed to the following further modification to their agreement for data entry services whereby Fastrac 24/7 agreed to compensate IDEC for the data entry services provided under the terms of the agreement at the following rates:

    i. 15.9 cents per document categorized by the parties as "vicarious" or "update."

    ii. 6 cents per document categorized by the parties as "non-vicarious," "retail," "look-up" or "obsolete."

15. Fastrac 24/7 performed all conditions, covenants and promises required on its part to be performed in accordance with the terms and conditions of its agreement with IDEC. Any other conditions have been waived and/or excused.

16. At no time prior to Fastrac 24/7's performance under its agreement with IDEC did IDEC ever disclose to Fastrac 24/7 any reason why it should delay performance and/or not perform pursuant to the agreement. Such information was material to IDEC's performance under the agreement.

17. Fastrac 24/7 was unaware of any reason why it should not perform under its agreement with IDEC.

18. Fastrac 24/7 was induced to act by IDEC's actions and omissions and relied upon such actions and omissions.

19. IDEC breached its agreement with Fastrac 24/7 by engaging in the following conduct:

    a. Failing to meet and maintain the minimum accuracy rates required under its agreement with Fastrac 24/7;

    b. Failing to meet and maintain the document processing turn around time required under its agreement with Fastrac 24/7;

    c. Overcharging Fastrac 24/7 for data entry services by assigning the rate of 15.9 cents or 16.4 cents to certain categories of documents processed that should have been assigned the rate of 6 cents pursuant to the parties' agreement;

///

        d.      Overcharging Fastrac 24/7 for unnecessarily processing documents multiple times;

        e.      Inputting biblical services written in Spanish into Fastrac 24/7's data entry system thereby corrupting the system; and

        f.      Terminating its agreement with Fastrac 24/7 without cause and without adequate notice.

20.    As a direct and proximate result of IDEC's material breaches of its agreement with Fastrac 24/7, Fastrac 24/7 has suffered damages in an amount to be proven at the time of trial and in excess of the jurisdictional limits of this Court but believed to be in excess of $75,000.00.

## SECOND CLAIM FOR RELIEF

### (Fraud Against Counter-Defendants IDEC, Varela and Collins)

21.    Counter-Claimant realleges and incorporates by reference the allegations contained in paragraphs 1 through 20, above, as though fully set forth herein.

22.    Beginning in August 2002 and continuing through April 2004, Counter-Defendants Varela and Collins, on behalf of themselves individually and on behalf of IDEC in their capacity as officers and employees of the corporation, made the following representations to Fastrac 24/7:

        a.      That IDEC had adequate facilities and technological resources to perform the data entry services required under its agreement with Fastrac 24/7;

        b.      That IDEC had competent and qualified personnel that were adequately trained to provide the data entry services required under IDEC's agreement with Fastrac 24/7;

        c.      That IDEC would assign the rate of 6 cents to the processing of documents that the parties categorized as "non-vicarious," "retail," "look-up" and "obsolete."

        d.      That IDEC could and would maintain certain minimum accuracy rates in performing the data entry services pursuant to its agreement with Fastrac 24/7; and

        e.      That IDEC could and would maintain the document processing turn around time required under its agreement with Fastrac 24/7.

23.    The above-referenced representations by Counter-Defendants Varela and Collins were false when made. The true facts are as follows:

        a.     IDEC did not have adequate facilities or technological resources to perform the data entry services required under its agreement with Fastrac 24/7;

        b.     IDEC did not have competent or qualified personnel that were adequately trained to provide the data entry services required under IDEC's agreement with Fastrac 24/7;

        c.     IDEC assigned the rate of 15.9 cents or 16.4 cents to the processing of documents that the parties categorized as "non-vicarious," "retail," "look-up" and "obsolete," that should have been assigned the rate of 6 cents pursuant to the parties' agreement;

        d.     IDEC could not and did not meet the agreed upon minimum accuracy rates in performing the data entry services pursuant to its agreement with Fastrac 24/7; and

        e.     IDEC could not and did not meet the document processing turn around time required under its agreement with Fastrac 24/7

24.     Counter-Defendants knew that the representations they made to Fastrac 24/7 as set forth in paragraph 22 above were false when they made them. Counter-Defendants knowingly made such false representations intending to deceive Fastrac 24/7 into relying on such misrepresentations, thereby inducing Fastrac to enter into and maintain an agreement with IDEC for data entry services.

25.     Fastrac 24/7 was at all relevant times ignorant of the falsity of the representations made by Counter-Defendants.

26.     In reliance on Counter-Defendants' false and misleading representations, Fastrac 24/7 entered into a data entry services agreement with IDEC.

27.     In further reliance on Counter-Defendants' false and misleading representations, Fastrac 24/7 permitted IDEC to perform data entry service for Fastrac 24/7 customer accounts that required certain minimum accuracy rates and turnaround times that IDEC could not and would not meet.

28.     In further reliance on Counter-Defendants' false and misleading representations, Fastrac 24/7 invested substantial resources in the form of training, guidance, support and supervision provided to IDEC, both on-site and off-site, in an effort to assist IDEC in complying with the terms of its agreement with Fastrac 24/7.

29. As a result of Counter-Defendants' fraudulent conduct, Fastrac 24/7 has sustained damages in the form of financial resources and manpower expended in an attempt to assist IDEC in complying with its data entry services agreement with Fastrac 24/7, and lost business opportunities and profits, all in an amount to be proven at trial but believed to be in excess of $1,500,000.00.

30. The aforementioned conduct of Counter-Defendants constitutes intentional misrepresentation, deceit, and/or concealment of material facts known to them with the intention of depriving Fastrac 24/7 of property and/or legal rights or otherwise causing injury, and was malicious, despicable and oppressive conduct subjecting Fastrac 24/7 to cruel and unjust hardship in conscious disregard of its rights, so as to justify an award of exemplary and punitive damages.

**THIRD CLAIM FOR RELIEF**

**(Negligent Misrepresentation Against Counter-Defendants IDEC, Varela and Collins)**

31. Counter-Claimant realleges and incorporate by reference the allegations contained in paragraphs 1 through 30 above, as though fully set forth herein.

32. The representations of Counter-Defendants described in paragraph 22 above were made without any reasonable basis for believing them to be true.

33. Counter-Defendants knew or should have known that such material representations were untrue.

34. Counter-Defendants' misrepresentations were made for the purpose of inducing Fastrac 24/7 to enter into an agreement for data entry services with IDEC, by persuading Fastrac 24/7 that IDEC had the ability and intent to perform its obligations required under said agreement.

35. Fastrac 24/7 was unaware of the falsity of the representations made by Counter-Defendants.

36. In reliance on Counter-Defendants' false and misleading representations, Fastrac 24/7 entered into and maintained a data entry services agreement with IDEC.

37. In further reliance on Counter-Defendants' false and misleading representations, Fastrac 24/7 permitted IDEC to perform data entry services for Fastrac 24/7 customer accounts

///

1  that required certain minimum accuracy rates and turnaround times that IDEC could not and
2  would not meet.

3      38. In further reliance on Counter-Defendants' false and misleading representations,
4  Fastrac 24/7 invested substantial resources in the form of training, guidance, support and
5  supervision provided to IDEC, both on-site and off-site, in an effort to assist IDEC in complying
6  with the terms of its agreement with Fastrac 24/7.

7      39. As a direct and proximate result of the negligent misrepresentations of Counter-
8  Defendants, Fastrrac 24/7 has been damaged in an amount to be proven at trial but believed to be
9  in excess of $1,500,000.00, including lost profits, lost business opportunities and out-of-pocket
10 expenses.

## FOURTH CLAIM FOR RELIEF

**(Interference With Contractual Relationships Against All Counter-Defendants)**

13     40. Counter-Claimant realleges and incorporate by reference the allegations contained
14 in paragraphs 1 through 39 above, as though fully set forth herein.

15     41. At the time Fastrac 24/7 entered into an agreement for data entry services with
16 IDEC in August 2002, Fastrac 24/7 was party to a written agreement with Ford Motor Credit
17 Company ("Ford") for automobile insurance tracking services (the "Ford Agreement"). Among
18 other material terms and conditions set forth in the Ford Agreement, Ford required that Fastrac
19 24/7 maintain a minimum accuracy level of 95% in connection with its services performed under
20 the Ford Agreement.

21     42. IDEC knew or should have known of the existence of the Ford Agreement in that
22 Fastrac 24/7 delegated the data entry services portions of the Ford Agreement to IDEC, and
23 specifically informed IDEC of material terms and conditions of the Ford Agreement, including
24 Ford's requirement of a minimum accuracy rate of 95%.

25     43. In or about May 2003, Fastrac 24/7 entered into a written agreement with World
26 Omni Financial Corporation ("World Omni"), for automobile insurance tracking services (the
27 "World Omni Agreement"). Among other terms and conditions set forth in the World Omni
28 Agreement, World Omni required that Fastrac 24/7 maintain an accuracy level of 95%.

44. IDEC knew or should have known of the existence of the World Omni Agreement in that Fastrac 24/7 delegated the data entry services portions of the World Omni Agreement to IDEC, and specifically informed IDEC of material terms and conditions of the World Omni Agreement, including World Omni's requirement of a minimum accuracy rate of 95% in connection with its services performed under the World Omni Agreement.

45. During the period September 2002 through February 2004, IDEC intentionally engaged in the following conduct designed to disrupt Fastrac 24/7's economic relationships with Ford and with World Omni, and with the intent to harm Fastrac 24/7 financially and to induce Ford and World Omni to terminate their respective agreements with Fastrac 24/7:

   a. IDEC fraudulently represented that it could and would meet the minimum accuracy rates for data entry services required under the Ford Agreement and the World Omni Agreement when, in fact, it knew it could not do so and ultimately failed to do so.

   b. IDEC fraudulently represented that it had adequate facilities and technological resources to perform the data entry services required under the Ford Agreement and World Omni Agreement when it did not.

   c. IDEC fraudulently represented that it had competent and qualified personnel that were adequately trained to provide the data entry services required under the Ford Agreement and World Omni Agreement when it did not.

46. As a proximate result of IDEC's tortious conduct described herein and its failure to meet the minimum accuracy rates required under the Ford Agreement, Ford terminated that agreement in November 2003.

47. As a proximate result of IDEC's tortious conduct described herein and its failure to meet the minimum accuracy rates required under the World Omni Agreement, World Omni terminated that agreement in April 2004.

48. As a proximate result of IDEC's tortious conduct described herein and the termination by Ford and World Omni of their respective agreements with Fastrac 24/7, Fastrac 24/7 has suffered damages in an amount to be proven at trial but believed to be in excess of $1,500,000.00.

49. The aforementioned acts of IDEC constitute malicious, despicable and oppressive conduct subjecting Fastrac 24/7 to cruel and unjust hardship in conscious disregard of its rights, so as to justify an award of exemplary and punitive damages.

WHEREFORE, Counter-Claimant prays for judgment against Counter-Defendants, and each of them, as follows:

1. For an award of general and special damages against Counter-Defendants according to proof at trial;

2. *For an award of punitive damages in an amount sufficient to punish and make an example of Counter-Defendants and to deter others from similar misconduct in the future;*

3. For an award of cost of suit;

4. For reasonable attorneys' fees and costs; and

5. For such other and further relief as the Court may deem just and proper.

DATED: February 11, 2005         LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: _____
Callie A. Bjurstrom
Michelle A. Herrera
Attorneys for Fastrac 24/7 Corp., Ithaka Holdings, Inc. and David Ames

## DEMAND FOR JURY TRIAL

Counter-Claimant hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: February __, 2005          LUCE, FORWARD, HAMILTON & SCRIPPS LLP

By: /s/ Michelle Herrera
Callie A. Bjurstrom
Michelle A. Herrera
Attorneys for Fastrac 24/7 Corp., Ithaka Holdings, Inc. and David Ames

2011718.3